UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ERNEST QUINTERO,

        Plaintiff,

        v.                                           Case No. 19-cv-0759-bhl

JAVIER VEGA, et al.,

        Defendants.

---

## DECISION AND ORDER

---

      Plaintiff Ernest Quintero, who is serving a state prison sentence at the Wisconsin Resource Center and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Quintero is proceeding on Fourth Amendment claims based on allegations that Defendants entered his apartment without a warrant and used excessive force during his arrest. On April 16, 2021, Defendants filed a motion for summary judgment. Dkt. No. 41. A few days later, the Court reminded Quintero of his obligations under Civil L. R. 56, including the requirement that he respond to each of Defendants' proposed material facts. Dkt. No. 43. The Court warned Quintero that if he did not respond to Defendants' proposed material facts, the Court would deem the facts to be admitted. On May 11, 2021, Quintero filed a legal brief in response to Defendants' motion; however, he did not respond to Defendants' proposed material facts. Accordingly, the Court deems the facts in Defendants' statement of proposed material facts admitted solely for the purpose of deciding summary judgment. *See* Civil L. R. 56(b)(4). For the reasons explained below, the Court will grant Defendants' motion and dismiss this case.

## BACKGROUND

      On November 24, 2017, Kenosha police were dispatched to a residence to investigate a "trouble unknown" call. Dkt. No. 42-8 at ¶4. Officer Arellano (not a defendant) arrived first and observed a woman sitting outside. She was shoeless, and her face was swollen and bleeding. She told the officer that "he beat me bad this time," explaining that he had punched, kicked, and choked

her. *Id.* at ¶¶7, 9. The woman identified her assailant as Quintero; she described him as her "boyfriend" with whom she lived. *Id.* at ¶8. She told responding officers that Quintero was still at their apartment across the street, and she gave Officer Arellano a key to the outside door. She told him that she and Quintero lived in the lower apartment, and she gave officers permission to go inside the apartment. The woman warned the officers that Quintero was known to fight with police and that he had threatened to barricade himself in the apartment if the police were called. *Id.* at ¶¶13-17.

Using the key given to them, Officer Tanya Kennedy (not a defendant) and Defendant Officers Javier Vega, Joshua Goldberg, and Austin Brechue entered the building where the woman said she and Quintero resided. Although the key unlocked the outside door to the building, it did not unlock the apartment door, and the woman was unable to give officers a key to unlock the apartment door. Dkt. No. 42-8 at ¶18, 21.

Officers shouted through the door in an effort to make contact with Quintero, but they received no response. A lieutenant informed the officers that, if Quintero did not respond, they should force entry through the locked door, so Brechue forced entry into the apartment. Once inside, Brechue and Vega identified themselves as police and ordered Quintero to come out of the bedroom with his hands up. When Quintero came out of the bedroom, officers told him to turn around, face away from the officers, and get on his knees. Defendants assert that Quintero did not comply with the orders, but instead continued to advance toward them. Dkt. No. 42-8 at ¶¶22-29.

According to Defendants, because Quintero was not complying with their orders and appeared that he was going to charge the officers, Brechue attempted to take control of Quintero's left arm. Brechue asserts that Quintero physically resisted his efforts and continued to ignore the officers' orders, so Brechue "directed him to the floor in a controlled manner." Dkt. No. 42-8 at ¶31. According to Defendants, Quintero continued to physically resist and tried to kick the officers. Defendants explains that Brechue administered knee strikes to Quintero "to cause disfunction," Vega delivered strikes to Quintero's hamstring, and Goldberg delivered two to three strikes to Quintero's ribs. Quintero then stopped fighting, and officers placed him in handcuffs. *Id.* at ¶¶33-34.

Quintero asserts that he knew the police were coming, so he put on his coat and glasses to turn himself in. Dkt. No. 44 at 1. He explains that he heard a loud crash and came out of the bedroom with his hands up. *Id.* He states that he was "was taken back by the police breaking in,

and all the yelling" and said, "Damn, you might as well start shooting." Dkt. No. 44 at 2. According to Quintero, he did not fight back or resist when officers tried to place him under arrest. Dkt. No. 42-2 at 10. He asserts that Brechue and Goldberg "drove [him] at a high rate of force to the other side of the room" and slammed his head into the corner of the door frame. Dkt. No. 44 at 2. Quintero states that the impact caused his head to split open. *Id.* He asserts that, after he fell to the floor, Defendants beat him as he laid face down in his blood. *Id.* Quintero explains that he received ten staples to his forehead, and he damaged three discs in his neck. *Id.* at 2-3; *see* Dkt. No. 42-2 at 8-10.

After pleading no contest, Quintero was convicted of strangulation and suffocation (Wis. Stat. §940.235(1)), misdemeanor battery (Wis. Stat. §940.19(1)), and misdemeanor resisting an officer (Wis. Stat. §946.41(1)). Dkt. No. 42-8 at ¶36; Dkt. No. 42-2 at 12.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Quintero asserts that Defendants violated the Fourth Amendment when they entered his apartment without a warrant and used excessive force during his arrest. Defendants assert that their warrantless entry was reasonable because they obtained voluntary consent prior to entering

Quintero's apartment. They also assert that Quintero's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court will address each claim in turn.

**A. Defendants' Warrantless Entry Did Not Violate the Fourth Amendment.**

The Fourth Amendment generally prohibits entry into a person's home without a warrant; however, that prohibition does not apply when officers have obtained voluntary consent from the individual whose property is to be entered or from a third party who possesses common authority over the property. *Illinois v. Rodriquez*, 497 U.S. 177, 181 (1990). Quintero asserts that the woman who consented to Defendants entering his apartment did not "possess common authority over the property." He explains that she did not live with him and "would only stay the night once and in a while [sic]." Dkt. No. 1 at 2; Dkt. No. 44 at 4. He concedes she gave Defendants a key to the building, but he asserts that she "likely lifted it" because he does not know where she got it from. Dkt. No. 44 at 4. He explains that his landlord had called the police a week earlier to have her arrested, and he did not want her in the apartment. *Id.*

Based on this record, it appears that the woman likely did not have common authority over the apartment. That, however, is not the end of the analysis. The Supreme Court has clarified that a warrantless entry based on a third-party's consent is reasonable under the Fourth Amendment as long as the police reasonably *believed* that the third party had common authority over the property, even if it is later discovered that the third party did *not* have common authority over the property. *Rodriguez*, 497 U.S. at 186-89.

Defendants assert that they reasonably believed the woman had common authority over the apartment when she consented to their entry. They note that she was sitting outside shoeless and bleeding and identified Quintero, who she said was her boyfriend and with whom she lived, as the assailant. She told the officers what had happened and identified "their" apartment as the place where it had happened. She also stated, "he beat me bad this time," suggesting a long-term relationship. And, most significantly, she gave the officers a key to the outside door of the building. Quintero had no interactions with the officers prior to them entering his apartment, despite them repeatedly knocking on his door. Thus, their conclusion about whether the woman had authority over the apartment was based entirely on the information she provided them.

Based on the information the officers knew at the time, the Court concludes that they reasonably believed that the woman had authority to consent to their entry to the apartment. As

such, Defendants' warrantless entry into Quintero's apartment was reasonable under the Fourth Amendment, and Defendants are entitled to summary judgment on this claim.

### B. Quintero's Excessive Force Claim Is Barred by *Heck v. Humphrey*.

Quintero eventually pled no contest to and was found guilty of resisting an officer. *See* Wis. Stat. §946.41(1) ("whoever knowingly resists or obstructs an officer while such an officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor"). Despite his no contest plea, Quintero now asserts that when officers tried to place him under arrest he did *not* fight back or resist. Dkt. No. 42-2 at 10.

The Supreme Court held in *Heck v. Humphrey* that a plaintiff may not pursue civil claims that would necessarily imply the invalidity of his criminal conviction unless he proves that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-87 (1994). The Seventh Circuit has acknowledged that, while there is nothing inherently contradictory about a plaintiff who has been convicted of resisting an officer bringing a claim for excessive force, *Heck* would bar a suit where the "factual claims in the civil suit necessarily imply the invalidity of the criminal conviction[.]" *Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016).

That is the case here. Under Wis. Stat. §946.41(1), a person is guilty of resisting an officer when he "knowingly resists" an officer, but if the incident unfolded as Quintero asserts, he could not have been guilty of knowingly resisting because he now says he did *not* resist or fight back during his arrest. Quintero's suit for excessive force would not have been barred by *Heck* had he acknowledged that—as officers assert—he resisted by fighting against the officers' hold, stiffening his arms, and kicking his legs, nor would his suit have been barred had he simply avoided the topic of his resistance. After all, even though *some* use of force may have been warranted, a plaintiff can still claim that the *degree* of force used was unreasonable. *See Douglas v. Village of Palatine*, No. 17-C-6207, 2021 WL 979156, at *3 (N.D. Ill. March 16, 2021). But Quintero's current version of events—that he did not resist or fight back—"negates the mental state necessary to support his conviction" for resisting an officer "and thus necessarily implies the invalidity of his conviction." *Tolliver*, 820 F.3d at 244. Accordingly, as long as Quintero's conviction stands, "he is confined to a version of the facts that does not undermine the conviction." *Id.* at 264. Defendants are entitled to summary judgment on this claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 4.) is **GRANTED.** Quintero's claim that Defendants' entered his apartment without a warrant is **DISMISSED with prejudice**, and his claim that Defendants used excessive force while arresting him is **DISMISSED without prejudice** because it is barred by *Heck v. Humphrey*. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of June, 2021.

BY THE COURT:

s/ *Brett H.Ludwig*
Brett H. Ludwig
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.